24-1038

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
_____

IN RE: GESTURE TECHNOLOGY PARTNERS, LLC,

*APPELLANT.*

_____

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Reexamination No. 90/014,903.
_____

BRIEF FOR APPELLEE—DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE

FARHEENA Y. RASHEED
Acting Solicitor

AMY J. NELSON
Acting Deputy Solicitor

SARAH E. CRAVEN
MARY L. KELLY
Associate Solicitors
Office of the Solicitor
U.S. Patent & Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035
*Attorneys for the Director of the*
*U.S. Patent and Trademark Office*

June 11, 2024

# REPRESENTATIVE CLAIMS

13.   An image capture device comprising:

a device housing including a forward facing portion, the forward facing portion encompassing a digital camera adapted to capture an image and having a field of view and encompassing a sensor adapted to detect a gesture in the digital camera field of view; and

a processing unit operatively coupled to the sensor and to the digital camera, wherein the processing unit is adapted to:

detect a gesture has been performed in the electro-optical sensor field of view based on an output of the electro-optical sensor, and

correlate the gesture detected by the sensor with an image capture function and subsequently capture an image using the digital camera, wherein the detected gesture is identified by the processing unit apart from a plurality of gestures.

15.   The image capture device of claim 13 wherein the detected gesture includes a pose.

18.   The image capture device of claim 13 wherein the sensor is fixed in relation to the digital camera.

# TABLE OF CONTENTS

I.     STATEMENT OF THE ISSUES ....................................................1

II.    STATEMENT OF THE CASE.........................................................2

    A.    The '949 patent claims a device that takes a picture
          based on detecting a user's command gesture. ........................3

    B.    Sears teaches a reading device that takes a picture
          based on detecting a user's command gesture. ........................5

    C.    The Board's Decision................................................................7

          1.    The Board decided that claims 8-18 would have
                been obvious, finding that Sears is analogous
                art and teaches or renders obvious all of the
                disputed claim limitations..............................................7

          2.    The Board declined to vacate the reexamination
                order, finding a substantial new question of
                patentability and jurisdiction to reexamine an
                expired patent.............................................................12

III.    SUMMARY OF THE ARGUMENT .................................................13

IV.    STANDARD OF REVIEW ..............................................................16

V.    ARGUMENT .................................................................................17

    A.    The Board correctly decided that claims 8-18 of the
          '949 patent would have been obvious over Sears. ..................17

          1.    Substantial evidence supports the Board's
                findings that Sears is analogous art..............................18

          2.    Substantial evidence supports the Board's
                findings that Sears teaches claim 13's forward-
                facing portion of a device housing.................................22

3.  Substantial evidence supports the Board's findings that Sears teaches claim's 13 processing unit adapted to detect a gesture and to capture an image.............................................27

4.  Substantial evidence supports the Board's findings that Sears teaches claim 15's pose limitation, which the Board correctly construed as including a hand-only pose. ......................................29

5.  Substantial evidence supports the Board's findings that Sears teaches claim 18's limitation of cameras in fixed relation to one other........................32

B.  Sears raises a substantial new question of patentability by providing teachings missing from the prior art cited during the original prosecution. ...............................33

C.  The USPTO has the authority to reexamine an expired patent that, like the '949 patent, is still enforceable for past damages. ...............................................34

VI.  CONCLUSION .................................................................................37

# TABLE OF AUTHORITIES

## Cases

*Airbus S.A.S. v. Firepass Corp.*,
    941 F.3d 1374 (Fed. Cir. 2019) ........................................................... 16

*Bayer Aktiengesellschaft, In re*,
    488 F.3d 960 (Fed. Cir. 2007) .............................................................. 17

*Bigio, In re*,
    381 F.3d 1320 (Fed. Cir. 2004) ........................................................... 19

*Clay, In re*,
    966 F.2d 656 (Fed. Cir. 1992) ....................................................... 18, 19

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938) ............................................................................. 17

*DBC, In re*,
    545 F.3d 1373 (Fed. Cir. 2008) ........................................................... 34

*Donner Tech., LLC v. Pro Stage Gear, LLC*,
    979 F.3d 1353 (Fed. Cir. 2020) ........................................................... 22

*Ethicon LLC v. Intuitive Surgical, Inc.*,
    No. 2021-1601, 2022 WL 1576779 (Fed. Cir. May 19, 2022) ............... 22

*Gartside, In re*,
    203 F.3d 1305 (Fed. Cir. 2000) ........................................................... 17

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
    256 F.3d 1323 (Fed. Cir. 2001) ........................................................... 31

*Jolley, In re*,
    308 F.3d 1317 (Fed. Cir. 2002) ........................................................... 17

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007) ............................................................................. 16

*Oil States Energy Services, LLC v. Greene's Energy Group, LLC*,
    584 U.S. 325 (2018) ............................................................................. 35

*Personalized User Model, LLP v. Google Inc.*,
    797 F.3d 1341 (Fed. Cir. 2015) ......................................................... 27

*Rambus, Inc., In re*,
    753 F.3d 1253 (Fed. Cir. 2014) ......................................................... 36

*Sony Corp. v. Iancu*,
    924 F.3d 1235 (Fed. Cir. 2019) ......................................................... 36

*Swanson, In re*,
    540 F.3d 1368 (Fed. Cir. 2008) ......................................................... 17

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
    574 U.S. 318 (2015) ......................................................... 17

*Thorner v. Sony Computer Ent. Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) ......................................................... 24

*Universal Camera Corp. v. NLRB*,
    340 U.S. 474 (1951) ......................................................... 17

*Unwired Planet, LLC v. Google Inc.*,
    841 F.3d 995 (Fed. Cir. 2016) ......................................................... 8, 20

*Vivint, Inc., In re*,
    14 F.4th 1342 (Fed. Cir. 2021) ......................................................... 34

*Watts, In re*,
    354 F.3d 1362 (Fed. Cir. 2004) ......................................................... 16

**Statutes**

5 U.S.C. § 706(2)(E) ......................................................... 17

28 U.S.C. § 1295(a)(4)(A) ......................................................... 13

35 U.S.C. § 112, ¶ 6 ......................................................... 11, 27

35 U.S.C. § 141(b) ......................................................... 13

35 U.S.C. § 286 ......................................................... 13, 35

35 U.S.C. § 302 ......................................................... 13, 36

iv

## Regulations

37 C.F.R. § 1.510(a) ....................................................................... 36

## STATEMENT OF RELATED CASES

The Director is not aware of any other appeal from the Patent Trial and Appeal Board ("the Board") of the United States Patent and Trademark Office ("USPTO") in connection with Reexamination No. 90/014,903 that has previously been before this Court. The Director is aware of related cases listed in Appellant's statement of related cases. The Director is also aware of two cases—*In re Gesture Technology Partners, LLC*, No. 24-1037 (Fed. Cir.) and *In re Gesture Technology Partners, LLC*, No. 24-1585 (Fed. Cir.)—pending in this Court involving related patents that may directly affect, or be directly affected by, this Court's decision in the pending appeal.

# I.    STATEMENT OF THE ISSUES

Gesture appeals from a Board decision finding its claims to an image-capture device to be unpatentable on reexamination. Claims 13, 15, and 18 of the '949 patent are representative and recite a device that captures an image (takes a picture) in response to detecting a specified gesture by a user. The claimed device in independent claim 13 comprises 1) a housing comprising a forward-facing portion with two cameras and 2) a processing unit coupled to the cameras that is adapted to detect the specified gesture and take a picture. Dependent claim 15 further recites that the detected gesture includes a pose, while dependent claim 18 recites that the cameras are in fixed relation to one another.

The Board found that claims 13, 15, and 18 would have been obvious over Sears, which the Board found discloses a reading device with two cameras coupled to a computer to detect a user's hand gestures and, in one embodiment, take a picture. As an initial matter, the Board found that Sears is analogous art to the '949 patent, and specifically is in the same field of endeavor, namely camera systems that take actions, e.g., pictures, based on detected gestures. The Board then found that Sears either teaches or renders obvious all of the disputed claim limitations. The issues on appeal re-

1

garding the merits of the Board's obviousness decision are whether substantial evidence supports the Board's findings that Sears 1) is in the same field of endeavor as the '949 patent; 2) teaches or renders obvious a forward-facing portion of a device housing with the two cameras (claim 13); 3) teaches a processing unit adapted to take a picture in response to a user's gesture (claim 13); 4) teaches a pose as construed by the Board (claim 15); and 5) renders obvious the two cameras in fixed relation to one another (claim 18).

The Board also rejected Gesture's challenges to the order granting the reexamination of the '949 patent. Two additional issues on appeal are 1) whether Sears raises a substantial new question of patentability by disclosing teachings missing from the prior art cited during the original prosecution of the '949 patent and 2) whether the USPTO has the authority to reexamine and cancel claims in an expired patent, like the '949 patent here, that can still be enforced for past damages.

## II.    STATEMENT OF THE CASE

This appeal arises from a reexamination of Gesture's U.S. Patent No. 8,878,949 ("the '949 patent"). In the reexamination, the Board affirmed the examiner's rejection of claims 8-18 of the '949 patent as obvious over Sears.[1] Appx1-29; Appx637-661; Appx709-722.

---

[1] U.S. Patent No. 6,115,482. Appx391-412.

**A.    The '949 patent claims a device that takes a picture based on detecting a user's command gesture.**

The '949 patent is titled "Camera based interaction and instruction." Appx31. The patent broadly states that "[i]n a preferred embodiment, stereo photogrammetry is combined with digital image acquisition to acquire or store … poses of interest and/or to interact with the subject in order to provide data to or from a computer." Appx40 1:6-10. More specifically, the '949 patent describes a system that takes a picture after detecting, *inter alia*, a user's gesture. *See* Appx42 5:30-49; Gesture's Opening Brief ("Br.") at 4.

To operate its system, the '949 patent uses an image-capture device. The device includes multiple cameras: a high-resolution camera to take pictures (202 in Figure 2A) and a lower-resolution camera to detect an object's position (210 or 211 in Figure 2A). Appx41 4:61–Appx42 5:9. Figure 2C, reproduced below, shows the device with the cameras facing out from the same side of the device's housing and towards the users. Appx35.

3



**FIG. 2C**

The device also contains a computer (or processing unit) coupled to the cameras. The computer processes positional data detected by the low-resolution camera and, based on detecting a specified gesture or pose, sends a signal to the high-resolution camera to display, store, or transmit the last image taken. Appx42 5:24-27, 6:6-19. The image-capture device is thus configured to take a picture in response to a command gesture. Appx42 5:30-49. As the patent states, the system automatically "shoot[s]" a picture when a user executes, for example, "a certain pose" or "sequence of poses (e.g. gestures)," or when a user gives "a particular signal"—"i.e. a silent command to take the picture"—such as "raising one's right hand." Appx42 5:30-31, 34-36, 46-49; *see* Appx42 6:23-33.

4

Independent claim 13 and dependent claims 15 and 18 are reproduced below and are representative on appeal.

13.    An image capture device comprising:

a device housing including a forward facing portion, the forward facing portion encompassing a digital camera adapted to capture an image and having a field of view and encompassing a sensor adapted to detect a gesture in the digital camera field of view; and

a processing unit operatively coupled to the sensor and to the digital camera, wherein the processing unit is adapted to:

detect a gesture has been performed in the electro-optical sensor field of view based on an output of the electro-optical sensor, and

correlate the gesture detected by the sensor with an image capture function and subsequently capture an image using the digital camera, wherein the detected gesture is identified by the processing unit apart from a plurality of gestures.

15.    The image capture device of claim 13 wherein the detected gesture includes a pose.

18.    The image capture device of claim 13 wherein the sensor is fixed in relation to the digital camera.

Appx3.

**B.    Sears teaches a reading device that takes a picture based on detecting a user's command gesture.**

Sears, titled "Voice-Output Reading System with Gesture-Based Navigation," discloses an electronic reading device (with voice output) that is

controlled by a user's hand gestures. Appx391, abstract. The electronic reading system converts text to synthesized speech and allows users to navigate within the text and select text to be read using manual command gestures. Appx398 1:23-29; Appx399 3:19-21; Appx401 8:6-9.

In one embodiment, Sears's reading machine has two cameras: a low-magnification wide-angle field of view ("FOV") camera to "track command gestures" (87 in Figure 3) and a smaller FOV pan-tilt camera to perform optical character recognition ("OCR") on captured images (89 in Figure 3). Appx405 16:14-44; Appx406 17:55-63. As shown in Figure 3 below, the cameras in one such embodiment are located on the device's platform, with both facing down towards the text to be imaged and read. Appx394. In another embodiment, the reading device is worn as reading glasses, with the cameras facing wherever the user faces. Appx407 20:65–Appx408 21:16.



**Fig. 3**

Sears's reading machine further comprises a computer that coordinates the cameras' actions. Appx406 18:9-13. Sears states that these device elements all may be "placed within a common housing." Appx406 18:14-18.

Sears discloses that its reading device may immediately begin imaging and OCRing text in its field of view without gestural input from a user. Appx406 18:28-34. The device then reads already-imaged text immediately in response to a user's gesture command. Appx406 18:34-36. Yet, Sears further states that, after a gesture command, "[i]f the text to be read is not among that already interpreted, then image capture ... of the indicated text ... can begin." Appx406 18:36-38. In other words, Sears discloses that the reading machine takes a picture of *un*interpreted text for OCR in response to a user's hand gesture.

### C.    The Board's Decision

#### 1.    The Board decided that claims 8-18 would have been obvious, finding that Sears is analogous art and teaches or renders obvious all of the disputed claim limitations.

The Board affirmed the examiner's rejection of claims 8-18 as obvious over Sears, adopting the examiner's factual findings and reasoning (except as noted) as its own. Appx7. Based on the arguments presented by Gesture, the Board treated claims 13, 15, and 18 as representative on appeal. Appx4-6.

The Board first decided that Sears qualifies as analogous art, finding that Sears is in the same field of endeavor as the '949 patent. Appx9-13. The Board rejected Gesture's argument that Sears's field of endeavor is limited to electronic reading machines, explaining that a patent's field of endeavor is not limited to "the narrowest possible conception of the field, or the particular focus within a given field." Appx9 (quoting *Unwired Planet, LLC v. Google Inc.*, 841 F.3d 995, 1001 (Fed. Cir. 2016)). The Board noted that the analysis properly starts with the field of the '949 patent and asks whether Sears is in that field. Appx9. The Board found the '949 patent's field to be "specifying commands using gestures captured by a camera." Appx11. The Board then analyzed Sears's disclosure and found that Sears's field—navigating a document by "specifying commands using gestures captured by a camera"—although narrower, is nevertheless within the '949 patent's same field. Appx12. The Board thus confirmed the examiner's finding that both references are drawn to cameras that take actions, e.g., pictures, based on detected command gestures. Appx9 (quoting Appx652).

Turning to the second test for analogous art, the Board disagreed with the examiner's determination that Sears is not reasonably pertinent to the particular problem facing the '949 patent's inventor. Appx13. Yet, the Board stated that it did "not rely on the pertinent problem test in reaching [its]

decision" that Sears is analogous art. Appx13. Nevertheless, explaining that the examiner defined the pertinent problem too narrowly, the Board found that, for the reasons discussed for the field-of-endeavor test, the '949 patent addresses the particular problem of "specifying commands using gestures" and that Sears is directed to that same problem, i.e., "gesture-based navigation." Appx14.

The Board then found that Sears teaches or renders obvious all of the disputed limitations of the representative claims. Starting with claim 13, the Board found that Sears teaches the claim's forward-facing portion of a device housing that encompasses the cameras (the digital camera and sensor). Appx16-17; Appx644-645. The Board rejected Gesture's argument that "forward facing" precludes a device from facing downward. Appx14-15. The Board found that in view of the claim language, which states that the forward-facing portion encompasses the cameras, forward facing would be understood by a skilled artisan as the direction in which the device and the cameras face for taking a picture (whether horizontal or downward), and not the direction of the device in relation to the ground. Appx16; Appx653-654. The Board further found that the specification neither recites "forward facing" nor precludes the embodiments of Figures 1, 2C, and 5 from involv-

ing, for example, reclining as opposed to standing users. Appx16. Alternatively, the Board found that, even accepting Gesture's position that forward facing excludes downward facing, it would have been obvious to modify Sears's device to a horizontal-facing direction because such a direction was a known direction of camera operation, as shown by Sears's eyeglasses embodiment in Figure 4 (Appx17 (citing Appx395; Appx408 21:8-15)), and because it was well known to read notices posted in a horizontal-facing direction, such as a sign on a business's door or window (Appx16).

The Board next rejected Gesture's argument that the examiner provided no evidence that Sears's common device housing has a single forward-facing portion encompassing both cameras. Appx15. The examiner found that Sears and the '949 patent's Figure 2C equally disclose a forward-facing portion, and that Sears—which teaches placing the cameras in a common device housing (Appx645 (citing Appx406 18:15-18))—will necessarily have its cameras at the front of the housing, i.e., the forward-facing portion, as that is where the cameras are for taking pictures. Appx716. The Board affirmed, further finding that Sears's Figure 3 discloses the location and positional relationship of the two cameras that may be included in Sears's common housing, and that extension of the housing to the cameras in that

same configuration would involve only ordinary creativity for the skilled artisan. Appx17.

Moving to claim 13's "processing unit," the Board found that Sears discloses a processing unit—a computer operating via software—adapted to detect a gesture and capture an image.[2] Appx644 (citing Appx406 18:9-13); Appx645 (citing Appx406 18:33-38); *see* Appx716-717. While acknowledging that Sears's primary embodiment does not wait for a gesture to start capturing images (it automatically captures images and waits for a gesture to read OCRed text), the Board found that Sears nonetheless discloses capturing an image in response to a gesture, relying on Sears's additional disclosure that after a gesture command, if the text to be read is not among that already interpreted, "*then image capture … of the indicated text … can begin.*" Appx20 (quoting Appx406 18:35-38); Appx717-718.

The Board turned next to claim 15's limitation that the detected gesture includes "a pose," which the examiner found was disclosed by Sears's hand-only gestures, e.g., a closed fist. Appx646 (citing Appx402 10:29-30).

---

[2] The Board noted that though Gesture asserted that "processing unit" does not invoke 35 U.S.C. § 112, ¶ 6, Gesture did not explain how this assertion demonstrated error in the rejection. Appx7 n.5; Appx651. Accordingly, the Board did not address the issue.

The Board was not persuaded by Gesture's argument that a "pose" is a gesture that involves at least one body part other than a hand. Appx21. The Board found that the specification states that a gesture is an example of a pose and that a gesture can involve the hands, but did not define a pose as a gesture requiring a body part in addition to a hand. Appx21-22 (citing Appx42 5:36; Appx45 11:16-21). The Board noted that Gesture did not cite any reference or case law that required such a restrictive reading of a pose. And the Board observed that a general dictionary definition of pose did not support Gesture's argument. Appx22.

The Board similarly rejected Gesture's argument directed at claim 18 and its limitation that the sensor is fixed in relation to the digital camera. Relying on Sears's embodiment of devices mounted on a user's head, the Board found that Figure 4's eyeglasses, which have a wide-field camera on one earpiece and a narrower-field one on the other, teach using cameras in fixed relation to one another. Appx24 (citing Appx408 21:8-15; 22:1-5). The Board found this teaching sufficient to render claim 18 obvious. Appx24-25.

### 2. The Board declined to vacate the reexamination order, finding a substantial new question of patentability and jurisdiction to reexamine an expired patent.

The Board next rejected Gesture's arguments that the reexamination order should be vacated because Sears allegedly did not raise a substantial

new question of patentability or because the Office allegedly lacks jurisdiction over an expired patent. The Board found that Sears raises a substantial new question because Sears discloses teachings missing from the art cited during the original prosecution of the '949 patent. Appx28. The Board also concluded that the USPTO has jurisdiction to reexamine the expired '949 patent. Appx27. The Board reasoned 1) that the reexamination statute, 35 U.S.C. § 302, states that a request can be filed "at any time," so does not limit reexaminations to unexpired patents; 2) that the patentee still had rights under the patent to seek damages after expiration under 35 U.S.C. § 286; and 3) that this Court regularly reviews reexamination decisions where the patent expired prior to the Board's decision. Appx26-27.

Gesture timely appealed the Board's decision to this Court. The Court has jurisdiction under 35 U.S.C. § 141(b) and 28 U.S.C. § 1295(a)(4)(A).

## III.  SUMMARY OF THE ARGUMENT

The Board correctly found that representative claims 13, 15, and 18 of Gesture's '949 patent would have been obvious over Sears. Gesture challenges a number of the Board's findings as not supported by substantial evidence, including two based on the Board's underlying claim construction. Gesture's arguments fail to show error in the Board's decision.

First, substantial evidence supports the Board's findings that Sears is analogous art to the '949 patent, and specifically is within the same field of endeavor—cameras that take actions based on detected gestures. The Board properly analyzed Sears's disclosure of a reading device that detects command gestures and that takes pictures, and did not err in rejecting Gesture's argument that Sears's field of endeavor should be limited to its particular focus of an electronic reading machine. Alternatively, while the Board did not rely on it, substantial evidence supports its finding that Sears is also reasonably pertinent to a particular problem facing the '949 patent's inventor. And Gesture's attempt to undermine that finding by pointing to other problems disclosed in Sears lacks merit.

Second, substantial evidence supports the Board's findings that Sears teaches claim 13's forward-facing portion of a device housing encompassing two cameras. The Board correctly construed "forward facing" to mean the direction the device and cameras face for taking a picture, and thus as met by Sears's embodiment in Figure 3, in which the cameras face down towards the text to be imaged. Alternatively, the Board properly found that it would have been obvious to modify Sears's device to face horizontally forward, as this camera direction is disclosed by Sears's eyeglasses embodiment. Substantial evidence also supports the Board's findings that it would have been

obvious to a skilled artisan of ordinary creativity to modify Sears's Figure 3 to include its cameras, with their location and positional relationship, in a common device housing.

Third, substantial evidence supports the Board's findings that Sears teaches the claimed processing unit—a computer running software adapted to take a picture of text in response to a gesture. As the Board found, Sears discloses that, if a gesture directs the system to read text, and that text has not yet been interpreted, "then image capture … of the indicated text … can begin." Gesture's assertion that this disclosure does not say image capture, but rather OCR, ignores the very words Sears uses.

Fourth, for claim 15, substantial evidence supports the Board's findings that Sears teaches a gesture that includes "a pose" by teaching a hand-only pose, e.g., a closed fist. The Board correctly construed "pose" as including a hand-only pose based on the patent's disclosure of a pose as a gesture and of a gesture as including hands. The patent's disclosure of hand-only commands further supports the Board's construction, and contradicts Gesture's restrictive construction of a pose as a gesture that must involve another body part in addition to a hand.

Fifth, for claim 18, substantial evidence supports the Board's findings that Sears teaches cameras in fixed relation to one another. As the Board

found, Sears's device depicted as reading glasses in Figure 4 discloses cameras in a fixed relationship rendering this limitation obvious. Furthermore, as the examiner found and Gesture largely acknowledges, the cameras in Figure 3 both may be in a fixed location.

Finally, Gesture fails to show that the reexamination order should be vacated. The Board properly found that Sears raises a substantial new question of patentability because Sears teachings a limitation that was not present in, and thus was not cumulative of, teachings in the prior art cited in the original prosecution of the '949 patent. And the Board correctly decided that the USPTO has the authority under the reexamination statute to reexamine an expired patent like the '949 patent during its period of enforceability. The Board's decision should be affirmed.

## IV.   STANDARD OF REVIEW

Gesture bears the burden of showing that the Board committed reversible error. *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004).  Obviousness is a question of law based on underlying findings of fact, including what the prior art teaches. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007). Whether a reference qualifies as analogous prior art is also a question of fact. *Airbus S.A.S. v. Firepass Corp.*, 941 F.3d 1374, 1379 (Fed. Cir. 2019). Claim construction based on the intrinsic record is a question of law. *Teva*

*Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015). The ultimate question of whether a reexamination is based on a substantial new question of patentability is also a question of law. *In re Swanson*, 540 F.3d 1368, 1381 (Fed. Cir. 2008).

This Court reviews the Board's legal conclusions *de novo* and its factual findings for substantial evidence. 5 U.S.C. § 706(2)(E); *In re Gartside*, 203 F.3d 1305, 1315 (Fed. Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where two different conclusions may be warranted based on the evidence of record, the Board's decision to favor one conclusion over the other is the type of decision that must be sustained by this court as supported by substantial evidence." *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 970 (Fed. Cir. 2007) (citing *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002)).

## V.    ARGUMENT

### A.    The Board correctly decided that claims 8-18 of the '949 patent would have been obvious over Sears.

The Board correctly affirmed the examiner's rejection of claims 8-18 of Gesture's '949 patent as obvious over Sears. In affirming, the Board des-

ignated claims 13, 15, and 18 as representative. Appx3-6.[3] Gesture's arguments fail to show reversible error in the Board's findings that Sears is analogous art and that Sears teaches or renders obvious all of the disputed claim limitation; all of the Board's findings are supported by substantial evidence. *See* Br. at 12, 16, 22, 24, 26, 31, 35 (arguing all claim limitations under the substantial evidence standard).

### 1.    Substantial evidence supports the Board's findings that Sears is analogous art.

Substantial evidence supports the Board's findings that Sears is analogous art to the '949 patent because it is within the same field of endeavor, namely a camera system that takes actions, e.g., pictures, based on detecting a command gesture. Appx9-13. Gesture's argument to limit Sears's field of endeavor to electronic reading machines improperly reads Sears's field too narrowly and ignores the similarities between Sears's and the '949 patent's disclosure.

Prior art is analogous art if it 1) "is from the same field of endeavor, regardless of the problem addressed" or 2) "is reasonably pertinent to the particular problem with which the inventor is involved." *In re Clay*, 966 F.2d 656, 658-59 (Fed. Cir. 1992). To determine the field of endeavor, the Court

---

[3] Before this Court, Gesture confirms that claims 13, 15, and 18 are representative of claims 8-18. Br. at 38-39.

considers the patent's "explanations of the invention's subject matter ... including the embodiments, function, and structure of the claimed invention" compared to the prior art. *In re Bigio*, 381 F.3d 1320, 1325 (Fed. Cir. 2004). To determine if prior art is reasonably pertinent art, the Court looks to "the purposes of both the invention and the prior art." *Clay*, 966 F.2d at 659.

In finding Sears to be analogous art to the '949 patent, the Board first analyzed the '949 patent's field of endeavor. Based on the patent's disclosure, the Board found that its field is specifying commands to capture an image using gestures detected by a camera. Appx9-11. Gesture's asserted field of endeavor for the '949 patent, though more specific, is consistent with the Board's. Gesture asserts that the '949 patent's field is "a picture-taking system that performs real-time analysis of a gesture/pose observed by a sensor, and then captures an image using a digital camera upon determining that the gesture corresponds to an image capture command." Br. at 28. Gesture does not assert that any difference between the Board's and its statement of the '949 patent's field of endeavor affects the outcome here.

Turning to Sears, the Board found that its field is navigating a document through specifying commands using gestures captured by a camera. Appx12. The Board relied on Sears's disclosure, including its stated objec-

tive of specifying control parameters through manual gestures and its disclosure of a reading machine that captures images of text (to be interpreted and read) and tracks a user's hand-based gestural commands. Appx11-12 (quoting Appx391, abstract; Appx399 3:19-21, 4:3-7). Indeed, the Board found that Sears teaches a reading machine that captures images of text in response to a user's gesture. Appx20 (quoting Appx406 18:35-38). At bottom, as the Board found, Sears falls within the same field of endeavor as the '949 patent, as both are directed to camera systems that take actions, and specifically take pictures, based on detected command gestures. Appx9 (quoting Appx652); Appx12-13.

Gesture argues that the Board erred in its analysis of Sears's field of endeavor by improperly disregarding Sears's repeated references to an electronic reading machine and its OCR and text-to-speech functions. Br. at 27-28. While there is no dispute that Sears discloses a reading machine, Sears's field is not limited to that particular focus. *See Unwired Planet*, 841 F.3d at 1001 (finding that despite having different focuses, the patent and prior art both fell within the broader field of interface design). Sears is directed not just to a reading machine, but to a reading machine that images text via a two-camera system controlled by gesture-based commands. *See* Appx11-12. Sears's reading machine thus has the very same two-camera structure and

gesture-command function as the '949 patent's device. *See Bigio*, 381 F.3d at 1326 (looking to the structure and function of appellant's hairbrush and the prior art's toothbrush to find them to be within the same field of hand-held brushes). As such, the Board properly found that Sears is within the '949 patent's broader field of taking images based on gesture commands.

Gesture also argues that, while the Board did not rely on it, the Board still erred in finding that Sears satisfies the second prong for analogous art, i.e., that Sears is reasonably pertinent to the '949 patent's particular problem. Br. at 29. Although true that the Board did not rely on the reasonably pertinent test to find that Sears is analogous art (Appx13), the Board's findings suffice to show that Sears is reasonably pertinent because it is directed to the same problem as the '949 patent. The Board found that the '949 patent addresses the particular problem of specifying commands using gestures (Appx14), while Gesture asserts the problem more specifically as "taking pictures with a digital camera when certain gestures are recognized using a separate sensor" (Br. at 31).

Gesture asserts that the latter is not a problem to which Sears relates, citing other problems instead. Br. at 29-31. But this argument ignores the Board's findings. The Board found that Sears is directed to the problem of gesture-based navigation (Appx14), but more specifically the Board found

that Sears is directed to taking pictures with a camera (for OCR and voice output) based on a separate camera/sensor detecting a user's hand gesture (App11-12; Appx20). The fact that Sears addresses other problems is irrelevant. *See* Br. at 30. A reference may address more than one problem and still qualify as analogous art. *See Ethicon LLC v. Intuitive Surgical, Inc.*, No. 2021-1601, 2022 WL 1576779, at *4 (Fed. Cir. May 19, 2022) (relying on one common problem for analogous art and finding additional problems irrelevant); *Donner Tech., LLC v. Pro Stage Gear, LLC*, 979 F.3d 1353, 1361 (Fed. Cir. 2020) (A reference is analogous if "reasonably pertinent to *one* or more problems to which the claimed invention relates" (emphasis added)). Accordingly, Sears not only is in the same field of endeavor as the '949 patent, but also is reasonably pertinent to the very problem Gesture asserts was addressed by the inventor here.

### 2. Substantial evidence supports the Board's findings that Sears teaches claim 13's forward-facing portion of a device housing.

Substantial evidence supports the Board's findings that Sears either teaches claim 13's "forward-facing" portion of a device housing under its construction or renders this limitation obvious under Gesture's proffered construction. Substantial evidence also supports the Board's findings that Sears teaches that the forward-facing portion of the housing encompasses

the two cameras. Gesture's arguments attacking the Board's findings fail to establish error.

The Board first found that Sears teaches a "forward facing" portion of a device housing. Appx16. The Board decided that in view of claim 13's language, which recites that the forward-facing portion contains the cameras, "forward facing" would be understood by a skilled artisan as the direction in which the device and the cameras face for taking a picture (whether up, down, right, left, or on a diagonal) and not the direction of the device in relation to the ground. Appx16; Appx653-654. Based on this construction, the Board correctly found that forward facing was met by Sears's reading device in Figure 3, in which the cameras face down towards the printed page. *See* Appx14-15; Appx653-654.

Gesture argues that forward facing cannot include downward facing in relation to the ground "because in every embodiment in the '949 Patent, the portion of the device housing that includes a camera is <u>not</u> downwards facing," citing Figures 1, 2C, and 5. Br. 17-20. But, as the Board found, the patent's specification does not recite—let alone define—"forward facing," and nothing in the specification precludes the cited embodiments from involving, for example, reclining as opposed to standing users. Appx16. In other words, the patent's embodiments do not limit claim 13 to horizonal-

facing setups by implication, as Gesture asserts (Br. at 21), just by disclosing only horizonal-facing setups. *See Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1368 (Fed. Cir. 2012) (holding that "attached" did not implicitly exclude internal attachments by disclosing only external ones). Gesture points to nothing that excludes other types of setups, such as vertical-facing setups with, for example, the device mounted on the ceiling. Rather, as the Board found, the meaning of forward facing to a skilled artisan in the context of an image-capture device is the direction in which the device and its cameras face. Appx16. Indeed, as the examiner noted, Gesture's position would mean that the same device would or would not be "forward facing" (and thus would or would not infringe) based solely on the direction that a user chose to point the device. Appx653-654.

Alternatively, the Board found that, even accepting Gesture's proffered construction of "forward facing" as excluding a downward-facing camera, it would have been obvious to modify Sears's reading device to operate in a horizonal-facing direction. Appx16. The Board found that horizontal facing was a known direction of camera operation, citing Sears's eyeglasses embodiment, and the Board found that it was well known to read notices posted on, for example, a business's door or window in a horizontal direction. Appx16-17; *see* Appx408 21:51-63 (explaining that a reason to make such a

modification is, *inter alia*, to read "text on public signage"). Gesture argues that Sears's device in Figure 3 is configured with a platform and legs to face downward, and that the Board provided no details on how such a modification would be successfully implemented. Br. at 21. However, as the Board found, Sears discloses the exact modification proposed: a two-camera embodiment in which the reading device is worn by a user as glasses with cameras that faces horizontally on an upright person. Appx17 (citing Appx395; Appx408 21:8-15). Sears thus discloses a successful modification of its platform-based reading machine to a horizontal-facing device, even referring to its eyeglass embodiment as a smaller, worn version of its larger two-camera embodiment. Appx407 20:65–Appx408 21:16.

The Board next found that Sears teaches that the forward-facing portion of the housing contains both cameras. *See* Appx17. As the Board found, Sears teaches that Figure 3's reading device comprises 1) two cameras, the digital camera and the sensor (Appx644 (citing Appx405 16:14-44)); and 2) a computer that coordinates the cameras' actions (Appx644 (citing Appx406 18:9-13)). The Board then found that Sears discloses that these device elements, e.g., the cameras in Figure 3, may be placed within a common housing. Appx17; Appx645 (citing Appx406 18:14-18).

Gesture argues that because Sears is silent about the shape of its common housing and the location of the cameras within it, Sears does not disclose that the cameras are located within the same, single forward-facing portion of the housing. Br. at 13-14. But, as the Board found, Figure 3 of Sears discloses the location and positional relationship of the two cameras, which is that the cameras sit next to each other facing the same direction on a common platform. Appx17; Br. at 13 (annotating Figure 3). The Board further found that extending Sears's common housing to include both cameras in the same configuration as in Figure 3 would be within the ordinary creativity of a skilled artisan. Appx17. In other words, the Board found that configuring the cameras as in Sears's Figure 3 and containing them within a common device housing would result in a device with both cameras located in a single forward-facing portion of the housing (i.e., the platform with a housing), just like the cameras in Figure 2C of the '949 patent.[4] *See* Appx17; Appx716.

---

[4] While Gesture points to Figure 4's eyeglasses as disclosing the cameras on "different" forward-facing portions of the housing (Br. at 15-16), the Board relied on Figure 3's embodiment for this limitation. Moreover, it is not clear how Gesture is construing "portion" to argue that Figure 4's housing has different forward-facing portions.

### 3. Substantial evidence supports the Board's findings that Sears teaches claim's 13 processing unit adapted to detect a gesture and to capture an image.

Substantial evidence also supports the Board's findings that Sears teaches claim 13's "processing unit" adapted to detect a user's command gesture and then capture an image. Gesture's arguments attacking the Board's findings again fail to show error.

As an initial matter, Gesture argues that the examiner erred in construing "processing unit" as invoking 35 U.S.C. § 112, ¶ 6. Br. at 9-11. Instead, Gesture contends that "processing unit" recites sufficient structure that a skilled artisan would understand it to mean "a microprocessor, computer, or central processing unit." Br. at 10. Gesture, however, does not suggest that adopting its proposed construction would in anyway alter or affect the Board's findings that Sears discloses a processing unit (i.e., a computer, Appx644) that undertakes the claimed functions. *See* Br. at 10. As such, the Board did not address Gesture's claim-construction argument (Appx7 n.5; *see* Appx651), and this Court need not either. *See Personalized User Model, LLP v. Google Inc.*, 797 F.3d 1341, 1350 (Fed. Cir. 2015) ("[W]e may not provide an advisory opinion on the meaning of a claim term that does not affect the merits of this appeal and thus is not properly before us.").

The Board found that Sears discloses the claimed processing unit by disclosing a computer that is operatively coupled to the device's cameras. Appx644 (citing Appx406 18:9-13). Then, for the processing unit's claimed function of taking a picture in response to a command gesture, the Board found that Sears discloses that if a gesture directs the system to read text, and that text has not yet been interpreted, "*image capture ... of the indicated text ... can begin.*" Appx20 (citing Appx406 18:35-38). The Board found that this image-capture function happens via computer software that determines if a particular command gesture occurs and, if so, sends a signal for the camera to take a picture of the text. Appx645 (citing Appx406 18:33-38); Appx716-718.

Gesture argues that the Board provided no evidence that Sears's computer is executing software to perform the claimed image-capturing function because Sears's primary embodiment teaches that OCR may begin immediately when printed material is placed within the camera's field of view. Br. at 23. In other words, according to Gesture, Sears teaches that image capture and OCR occur *before* a gestural command from the user, and that the gesture only directs the system to read the already-interpreted text, not to capture an image as claimed. Br. at 23-25. This argument is directly con-

tradicted by Sears's disclosure. As the Board found, Sears discloses that after a gesture command, when the text indicated to be read has not yet been interpreted (so cannot be read), the system captures an image of the text to be interpreted in response to the command gesture. Appx20; Appx406 18:35-38.

Gesture acknowledges this disclosure in Sears, but asserts that in this embodiment it is text interpretation via OCR and vocalization that is gesture controlled, not image capture. Br. at 26. This argument again ignores what Sears says. Sears expressly states that when the text has not been interpreted, *image capture* of the indicated text begins, not OCR or vocalization. Appx406 18:33-38. Substantial evidence thus supports the Board's findings that Sears teaches claim 13's processing unit adapted to take a picture in response to a user's gesture command.

> **4.  Substantial evidence supports the Board's findings that Sears teaches claim 15's pose limitation, which the Board correctly construed as including a hand-only pose.**

Substantial evidence supports the Board's findings that claim 15's detected gesture that includes "a pose" is disclosed by Sears's use of a closed fist or a flat hand as a command gesture. Appx646 (citing Appx402 10:29-30; Appx403 11:9). These findings rest on the Board's correct construction of "pose" as including a hand-only pose in light of the '949 patent's teachings

that a gesture is an example of a pose, i.e., "poses (e.g., gestures)" (Appx21 (quoting Appx42 5:36)) and that a gesture is the position or motion of parts of the body, such as the hands (Appx22 (quoting Appx45 11:16-20)). Gesture challenges the Board's construction of pose, asserting that the Board's finding that Sears teaches a pose is not supported by substantial evidence. Br. at 31.

Gesture first argues that claim differentiation requires that "pose" in claim 15 has a different meaning than "hand motion" recited in claim 14. Br. at 31-32. On this point there is no dispute. The examiner agreed that a hand motion differs from a pose, and relied on Sears's disclosure of fingers moving back and forth as disclosing a hand motion, but on Sears's disclosure of a static hand position (e.g., a fist) as disclosing claim 15's pose. Appx718 (citing Appx646).

Turning to Gesture's main argument, Gesture asserts that the claim language and the specification define pose as "a gesture," albeit "a gesture involving at least one body part other than a hand." Br. at 32. While a gesture or a pose certainly *can* involve another body part (e.g., arms or eyes) as the specification makes clear (Br. at 32-33), this does not mean that a hand

pose is not also a pose. As the Board correctly found, nothing in the specification or a dictionary definition requires Gesture's restrictive reading of a pose as involving at least one body part other than a hand. Appx22.

Rather, the '949 patent's disclosure is broader. The '949 patent states that the cameras can be used to see a person, or just "a part of a person such as *a hand*, leg, foot, fingers, *or* head." Appx41 3:5-6 (emphases added). And it provides examples in which a hand is the sole body part used as a command. For example, a command gesture is described as 1) a hand's distance from another object in Figure 2C (Appx42 6:23-33), 2) a "hand signal," such as a "hand position" (Appx43 7:51-56); or 3) the act of "raising one's right hand" (Appx42 5:46-49). This disclosure further supports the Board's construction of pose as including a hand-only pose. *See Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001) (explaining that a party may defend its existing claim construction with new citations to the specification).

Gesture argues that the Board erred in its construction by equating a pose with a gesture and finding that a gesture may involve just a hand. Br. at 34-35. But Gesture's definition also equates a pose with a gesture; Gesture defines a pose as "a gesture," just one "involving at least one body part

other than a hand." Br. at 32. Gesture asserts that this limitation on a gesture (as a pose) derives from an alternative embodiment disclosed in original claim 11, now claim 15, in which "a pose is a *non-limiting* example of a gesture." Br. at 34-35 (emphasis added). But Gesture does not explain how a non-limiting example of a gesture then limits a pose to a gesture that must include another body part other than a hand. Gesture therefore fails to show error in the Board's construction or its finding that Sears teaches a pose.

### 5. Substantial evidence supports the Board's findings that Sears teaches claim 18's limitation of cameras in fixed relation to one other.

Next, for claim 18, substantial evidence supports the Board's findings that Sears discloses that "the sensor is in fixed relation to the camera" by disclosing that the cameras in Sears's Figure 4 are fixed in relation to one another. Appx24; Appx648 (citing Appx408 22:1-8). As the Board explained, Figure 4's eyeglasses embodiment renders the limitation obvious. Appx24-25.

Gesture does not dispute that Sears's eyeglasses device includes cameras in fixed relation to each other. Rather, Gesture argues that the Board did not articulate a reason why it would have been obvious to fix the location of the cameras in Figure 3's reading machine. Br. at 37. But Sears expressly discloses placing cameras in a fixed position in a related embodiment, and

thus fixing the cameras' location on the platform of the reading machine in Figure 3 would have been obvious. *See* Appx24-25.

Furthermore, as the examiner found and Gesture concedes, Sears discloses fixing the location of cameras 87 and 89 in Figure 3's device. Appx719 (citing Appx406 17:40-43). Specifically, as Gesture acknowledges, Sears discloses that "camera 87 may be fixed in its orientation." Br. at 36 (citing Appx405 16:19-22). And in one embodiment, as Gesture also acknowledges, Sears discloses that one or more mirrors rotate, "while the camera 89 remains fixed in location and orientation." Br. at 36 (citing Appx406 17:40-43). In this embodiment, cameras 87 and 89 are fixed in relation to one another. Appx719. Gesture argues that embodiments with either camera 87 fixed or camera 89 fixed are mutually exclusive sub-embodiments, but cites nothing in Sears for support. *See* Br. at 36. Accordingly, the Board's findings that Sears teaches or renders obvious claim 18's further limitation should be affirmed.

## B. Sears raises a substantial new question of patentability by providing teachings missing from the prior art cited in the original prosecution.

Alternatively, Gesture argues that the reexamination order should be vacated because the examiner erred in finding a substantial new question of patentability. Br. at 40-41. Specifically, Gesture argues that Sears does

not teach technical disclosure—a forward-facing portion of a device housing encompassing cameras—missing from the prior art cited during the original prosecution of the '949 patent. Br. at 41. But, as discussed above, the Board found that Sears discloses this limitation. *See infra* Section V.A.2.

Moreover, the reexamination request asserted and the order found that Sears discloses a single device housing encompassing two cameras, a limitation which Gesture concedes was missing from, and thus is not cumulative of, prior art cited during the original prosecution. Br. at 41; Appx72-73; Appx597-598; *see In re DBC*, 545 F.3d 1373, 1382 (Fed. Cir. 2008) (affirming that non-cumulative art raised a substantial new question of patentability). This suffices to show that Sears raises a substantial new question of patentability, i.e., a question of patentability that the USPTO had not actually considered and decided on the merits, regardless of whether that question ultimately renders the claims unpatentable (though the Board found it did here). *See In re Vivint, Inc.*, 14 F.4th 1342, 1349 (Fed. Cir. 2021).

## C. The USPTO has the authority to reexamine an expired patent that, like the '949 patent, is still enforceable for past damages.

Finally, the Board correctly decided that the USPTO has the authority to reexamine an expired patent, like the '949 patent, under the reexamination statute. Appx26-27. As the Board found, and Gesture acknowledges

(Br. at 43), Gesture still has rights under the '949 patent, including the right to seek past damages under 35 U.S.C. § 286, a right that Gesture has repeatedly exercised since the patent expired. Br. at 1 (listing pending infringement cases).

Gesture contends that despite its continued assertion of rights in the '949 patent, the USPTO lost jurisdiction to cancel claims of the '949 patent after it expired, citing *Oil States Energy Services, LLC v. Greene's Energy Group, LLC*, 584 U.S. 325 (2018). Br. at 41, 43. Gesture misreads *Oil States*. In *Oil States*, the Supreme Court decided a challenge to the USPTO's authority to cancel patent claims in a post-grant proceeding, specifically *inter partes* review ("IPR"). 584 U.S. at 328-29. In upholding the USPTO's authority as not violating Article III or the Seventh Amendment, the Supreme Court relied on its past recognition that the decision to grant a patent involves public rights (i.e., it grants a public franchise), and concluded that an IPR, by simply reconsidering that grant, likewise involves public rights that may be adjudicated by the USPTO. *Id.* at 334-35. Gesture asserts that patent expiration extinguishes the public franchise, removing a patent from the USPTO's jurisdiction and placing it solely within the jurisdiction of Article III courts for claims of past damages. Br. at 42. Gesture, however, cites nothing from *Oil States* in support of this proposition. *See id.* And Gesture

ignores that the past damages Gesture seeks arise from that very same public franchise.

Gesture nevertheless expresses concern that the reexamination of an expired patent would give the USPTO the authority to retroactively modify an expired public franchise. Br. at 42. Gesture's position makes little sense because modifications via claim amendments are not allowed in a reexamination of an expired patent. *In re Rambus, Inc.*, 753 F.3d 1253, 1256 (Fed. Cir. 2014). And Gesture cites nothing—no statute, no rule, no precedent—that establishes that the USPTO cannot reconsider and cancel (not modify) the grant of a now-expired public franchise for which a patentee still retains certain rights. *See Sony Corp. v. Iancu*, 924 F.3d 1235, 1238 n.1. (Fed. Cir. 2019) (citing cases listing rights in an expired patent).

Rather, the reexamination statute permits any person to file a request for reexamination "at any time," not just before patent expiration. 35 U.S.C. § 302. And the USPTO has promulgated a regulation, which Gesture does not challenge, providing that a reexamination may take place any time during the period of a patent's enforceability. 37 C.F.R. § 1.510(a); *see* MPEP 2211. The '949 patent, which is still being enforced, is therefore subject to a reexamination under the reexamination statute and the USPTO's governing regulations.

## VI. CONCLUSION

For the foregoing reasons, the Court should affirm the Board's decision that claims 8-18 of the '949 patent would have been obvious over Sears, and should affirm the Board's decision not to vacate the order granting the reexamination.

Dated: June 11, 2024        Respectfully submitted,

/s/ Sarah E. Craven
FARHEENA Y. RASHEED
Acting Solicitor

AMY J. NELSON
Acting Deputy Solicitor

SARAH E. CRAVEN
MARY L. KELLY
Associate Solicitors

Office of the Solicitor
U.S. Patent & Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

*Attorneys for the Director of the
U.S. Patent and Trademark Office*

## CERTIFICATE OF COMPLIANCE

I certify pursuant to FRAP 32(a)(7) that the foregoing Brief for the Director complies with the type volume limitation. The total number of words in the foregoing brief, excluding the table of contents and table of authorities, is 7,771 as measured by the word-processing software used to prepare this brief.

Dated: June 11, 2024        Respectfully submitted,

/s/ Sarah E. Craven
Sarah E. Craven
Associate Solicitor
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035